## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JOHN T. MCNEILL, JR.,** | : | **Civil No.  1:21-CV-634** |
| | : | |
| **Plaintiff** | : | **(Magistrate Judge Carlson)** |
| | : | |
| **v.** | : | |
| | : | |
| | : | |
| **KILOLO KIJAKAZI,** | : | |
| **Acting Commissioner of Social Security,**[1] | : | |
| | : | |
| **Defendant** | : | |

## MEMORANDUM OPINION

## I.    Introduction

This is a curious case. John McNeill applied for disability and supplemental security income benefits pursuant to Titles II and XVI of the Social Security Act, citing degenerative joint disease in his left hip, chronic obstructive pulmonary disease, asthma, and obesity as his disabling impairments. With respect to these allegedly disabling conditions, the existing clinical record was meager, fragmentary, and largely unremarkable. This clinical record consisted of an August 2017

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Accordingly, pursuant to Rule 25(d) of the Federal Rules of Civil Procedure and 42 U.S.C. § 405(g) Kilolo Kijakazi is substituted for Andrew Saul as the defendant in this suit.

appointment at a walk-in clinic where he was treated for right knee pain; a May 2018 emergency room visit in which McNeill complained of pain in his side; and treatment records from a primary care practice spanning from November of 2018 to March 2019. None of these brief treatment encounters described a disabling level of impairment for McNeill and, in fact, it is undisputed that McNeill worked part-time during this period of claimed disability. Moreover, every medical professional who opined on the degree to which these conditions were disabling appeared to conclude that McNeill was capable of performing work at either a light or medium exertional level.

Given this record, which was largely devoid of any evidence of a disabling level of impairment, the ALJ denied McNeill's claim finding that he could perform light work. However, several aspects of this decision were potentially problematic. For example, the ALJ's decision rejected every medical opinion offered in this case, finding all of the opinions unpersuasive. Thus, in fashioning the residual functional capacity (RFC) assessment for McNeill, the ALJ seemingly discounted all medical opinions, including an opinion that largely supported the light work residual functional capacity assessment ultimately adopted by the ALJ in this decision. Further, the ALJ's treatment of one of McNeill's presenting concerns, his obesity, was cursory.

While these problematic aspects of the ALJ's analysis might have called for a remand on a more compelling factual record, in this case where there is simply no material evidence supporting a finding a disability, we conclude that any errors in the analysis of McNeill's claim are harmless. Therefore, we will affirm the decision of the Commissioner in this case.

## II.   <u>Statement of Facts and of the Case</u>

On June 8, 2018, John McNeill applied for disability and supplemental security income benefits pursuant to Titles II and XVI of the Social Security Act, citing degenerative joint disease in his left hip, chronic obstructive pulmonary disease, asthma, and obesity as his disabling impairments. (Tr. 22, 25). According to McNeill, he had experienced an onset of disability in October of 2017. (Tr. 24). McNeill was born in November 1968 and was 48 years old at the time of the alleged onset of his disability, making him a younger individual under the Commissioner's regulations. (Tr. 30). McNeill stated that he had not graduated high school but had attained an Associate's Degree. (Tr. 44).

McNeill had prior employment as a laborer, contractor, fabricator, grocery store employee and maintenance worker. (Tr. 227). Some of this employment had occurred after the alleged date of the onset of McNeill's disability. (<u>Id</u>.) Moreover, at the time of his disability hearing in June of 2019 McNeill testified that he was

3

employed part-time at a grocery store. (Tr. 46-7). Thus, McNeill was actually working during the time when he asserted he was wholly disabled.

McNeill's disability application drew sparse support from the clinical record. That clinical record revealed that in August of 2017, McNeill reported to a walk-in clinic complaining of pain his right knee. (Tr. 329). He was seen by a physician who diagnosed McNeill with bursitis, and instructed him to ice the knee, wrap it in an ace bandage and take medication for pain relief. (Tr. 330-31).

Some eight months later, in May of 2018, McNeill reported to the emergency room at the Moses Taylor Hospital complaining of pain in his left side. (Tr. 294-326). Examination results were largely unremarkable, (Tr. 299), and a CT examination was normal except for the presence of urinary tract infection and some kidney stones. (Tr. 302). McNeill was discharged with a prescription for antibiotics. (Tr. 309).

Finally, between November of 2018 and March of 2019, McNeill was seen by a primary care practice, which documented his chronic COPD, edema, asthma and obesity. (Tr. 365-387). While these treatment notes observed that McNeill would benefit from care management, none of the treatment records of this practice described McNeill's chronic conditions in terms that were wholly disabling. (Id.) In particular McNeill's obesity was thoroughly documented in the clinical record, with

care-givers assigning McNeill a height of five feet seven inches, a weight which fluctuated between 255 and 287 pounds, and a Body Mass Index (BMI), which ranged between 40 and 46. (Tr. 43, 100, 104, 226, 305, 347, 385).

Given this sparse treatment record, no medical expert has found that McNeill was totally disabled and two experts opined that McNeill was able to perform either light or medium work. Thus, on October 1, 2018, a state agency expert, Dr. David Hutz, concluded that while McNeill was obese, he nonetheless could work at a medium exertional level. (Tr. 96-119).   Likewise, on September 10, 2018, a consulting examining source, Dr. Zita Monfared, determined that McNeill suffered from obesity, COPD, degenerative hip disease, and asthma but could perform light exertional work, with some limitations on climbing, stooping, kneeling, crouching and crawling. Specifically, Dr. Monfared concluded that McNeill should never climb ladders or scaffolds, balance or crouch, but could occasionally climb stairs, stoop, kneel, and crawl. (Tr. 354).

It was against this clinical backdrop, a backdrop which provided meager support for McNeill's disability claim,  that an ALJ conducted a hearing regarding this disability application on June 7, 2019. (Tr. 35-72). McNeill and a vocational expert both appeared and testified at this hearing. (Id.) Following this hearing, on August 19, 2019 the ALJ issued a decision denying McNeill's application for

benefits. (Doc. 19-31). In that decision, the ALJ first concluded that McNeill satisfied the insured status requirements of the Act. (Tr. 24). At Step 2 of the sequential analysis that governs Social Security cases, the ALJ found that McNeill suffered from the following severe impairments: degenerative joint disease in his left hip, chronic obstructive pulmonary disease, asthma, and obesity. (Tr. 25).

At Step 3 the ALJ determined that McNeill did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. (Tr. 25-26). The ALJ then fashioned an RFC for McNeill that restricted him to light work with certain postural limitations. (Tr. 26). Based upon this RFC determination, the ALJ found that McNeill could both perform some of his past work, and also retained the capacity to perform other jobs that existed in significant numbers in the national economy. (Tr. 26-31). Having reached these conclusions, the ALJ held that McNeill had not met the demanding showing necessary to sustain his claim for benefits and denied this claim. (Tr. 31).

Given the paucity of clinical proof in this case, and the medical opinion consensus which seemed to agree that McNeill retained the capacity to perform some work, this was an unsurprising result. However, in reaching this result, there were certain aspects of the ALJ's decision which were potentially problematic. For example, the ALJ found that none of the medical opinions describing McNeill's

6

physical impairments were particularly persuasive. (Tr. 28). This conclusion was somewhat curious since the RFC fashioned by the ALJ actually adopted the weight carrying and exertional limitations found by Dr. Monfared, as well as some of the postural limitations recommended by Dr. Monfared, even though the ALJ characterized that medical opinion as "not very persuasive." (Id.)  The ALJ's consideration of McNeill's most thoroughly documented medical impairment, his obesity, was also somewhat cursory. The ALJ identified McNeill's obesity as a severe impairment at Step 2, (Tr. 25), made a passing reference to this condition when discussing McNeill's medical history, (Tr. 27), but then simply concluded "the record did not indicate that [McNeill's] obesity increased the severity of a coexisting or related impairment to the extent that the combination of impairments would medically equal a listing." (Tr. 26).

This appeal followed. (Doc. 1). On appeal, McNeill generally challenges the adequacy of the ALJ's explanation of this RFC determination, and particularly argues that the ALJ erred in not giving greater weight to Dr. Monfared's opinion, an opinion strongly suggested that McNeill retained the capacity to perform some light work. However, given the fact that McNeill worked during this period of claimed disability, and the lack of any clinical or opinion evidence supporting a claim of disability in this case, we conclude that any alleged shortcomings in the analysis of

McNeill's claim are, at most, harmless error. Therefore, we will affirm the decision of the Commissioner in this case.

## III.   <u>Discussion</u>

### A.   <u>Substantial Evidence Review – the Role of this Court</u>

When reviewing the Commissioner's final decision denying a claimant's application for benefits, this Court's review is limited to the question of whether the findings of the final decision-maker are supported by substantial evidence in the record.  See 42 U.S.C. §405(g); <u>Johnson v. Comm'r of Soc. Sec.</u>, 529 F.3d 198, 200 (3d Cir. 2008); <u>Ficca v. Astrue</u>, 901 F. Supp.2d 533, 536 (M.D.Pa. 2012). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." <u>Pierce v. Underwood</u>, 487 U.S. 552, 565 (1988).  Substantial evidence is less than a preponderance of the evidence but more than a mere scintilla. <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971).  A single piece of evidence is not substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a conflict created by the evidence.  <u>Mason v. Shalala</u>, 994 F.2d 1058, 1064 (3d Cir. 1993).  But in an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision]

from being supported by substantial evidence." <u>Consolo v. Fed. Maritime Comm'n</u>,

383 U.S. 607, 620 (1966). "In determining if the Commissioner's decision is

supported by substantial evidence the court must scrutinize the record as a whole."

<u>Leslie v. Barnhart</u>, 304 F. Supp.2d 623, 627 (M.D.Pa. 2003).

The Supreme Court has underscored for us the limited scope of our review in

this field, noting that:

> The phrase "substantial evidence" is a "term of art" used throughout
> administrative law to describe how courts are to review agency
> factfinding. <u>T-Mobile South, LLC v. Roswell</u>, 574 U.S. ——, ——,
> 135 S.Ct. 808, 815, 190 L.Ed.2d 679 (2015). Under the substantial-
> evidence standard, a court looks to an existing administrative record
> and asks whether it contains "sufficien[t] evidence" to support the
> agency's factual determinations. <u>Consolidated Edison Co. v. NLRB</u>,
> 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938) (emphasis
> deleted). And whatever the meaning of "substantial" in other contexts,
> the threshold for such evidentiary sufficiency is not high. Substantial
> evidence, this Court has said, is "more than a mere scintilla." <u>Ibid.</u>; <u>see,
> e.g., Perales</u>, 402 U.S. at 401, 91 S.Ct. 1420 (internal quotation marks
> omitted). It means—and means only—"such relevant evidence as a
> reasonable mind might accept as adequate to support a conclusion."
> <u>Consolidated Edison</u>, 305 U.S. at 229, 59 S.Ct. 206. <u>See Dickinson v.
> Zurko</u>, 527 U.S. 150, 153, 119 S.Ct. 1816, 144 L.Ed.2d 143 (1999)
> (comparing the substantial-evidence standard to the deferential clearly-
> erroneous standard).

<u>Biestek</u>, 139 S. Ct. at1154.

The question before this Court, therefore, is not whether the claimant is

disabled, but rather whether the Commissioner's finding that she is not disabled is

supported by substantial evidence and was reached based upon a correct application

of the relevant law. See Arnold v. Colvin, No. 3:12-CV-02417, 2014 WL 940205, at *1 (M.D.Pa. Mar. 11, 2014) ("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence.") (alterations omitted); Burton v. Schweiker, 512 F. Supp. 913, 914 (W.D. Pa. 1981) ("The Secretary's determination as to the status of a claim requires the correct application of the law to the facts."); see also Wright v. Sullivan, 900 F.2d 675, 678 (3d Cir. 1990) (noting that the scope of review on legal matters is plenary); Ficca, 901 F. Supp.2d at 536 ("[T]he court has plenary review of all legal issues . . . .").

Several fundamental legal propositions which flow from this deferential standard of review. First, when conducting this review "we are mindful that we must not substitute our own judgment for that of the fact finder." Zirnsak v. Colvin, 777 F.3d 607, 611 (3d Cir. 2014) (citing Rutherford, 399 F.3d at 552). Thus, we are enjoined to refrain from trying to re-weigh the evidence. Rather our task is to simply determine whether substantial evidence supported the ALJ's findings. However, we must also ascertain whether the ALJ's decision meets the burden of articulation demanded by the courts to enable informed judicial review. Simply put, "this Court requires the ALJ to set forth the reasons for his decision." Burnett v. Comm'r of Soc. Sec. Admin., 220 F.3d 112, 119 (3d Cir. 2000). As the Court of Appeals has noted on this score:

> In <u>Burnett</u>, we held that an ALJ must clearly set forth the reasons for his decision. 220 F.3d at 119. Conclusory statements . . . are insufficient. The ALJ must provide a "discussion of the evidence" and an "explanation of reasoning" for his conclusion sufficient to enable meaningful judicial review. <u>Id</u>. at 120; <u>see Jones v. Barnhart</u>, 364 F.3d 501, 505 & n. 3 (3d Cir.2004). The ALJ, of course, need not employ particular "magic" words: "<u>Burnett</u> does not require the ALJ to use particular language or adhere to a particular format in conducting his analysis." <u>Jones</u>, 364 F.3d at 505.

<u>Diaz v. Comm'r of Soc. Sec.</u>, 577 F.3d 500, 504 (3d Cir. 2009).

Thus, in practice ours is a twofold task. We must evaluate the substance of the ALJ's decision under a deferential standard of review, but we must also give that decision careful scrutiny to ensure that the rationale for the ALJ's actions is sufficiently articulated to permit meaningful judicial review.

## B.   Initial Burdens of Proof, Persuasion, and Articulation for the ALJ

To receive benefits under the Social Security Act by reason of disability, a claimant must demonstrate an inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A); 42 U.S.C. §1382c(a)(3)(A); <u>see also</u> 20 C.F.R. §§404.1505(a), 416.905(a). To satisfy this requirement, a claimant must have a severe physical or mental impairment that makes it impossible to do his or her previous work or any other substantial gainful

activity that exists in the national economy.  42 U.S.C. §423(d)(2)(A); 42 U.S.C. §1382c(a)(3)(B); 20 C.F.R. §§404.1505(a), 416.905(a).  To receive benefits under Title II of the Social Security Act, a claimant must show that he or she contributed to the insurance program, is under retirement age, and became disabled prior to the date on which he or she was last insured.  42 U.S.C. §423(a); 20 C.F.R. §404.131(a).

In making this determination at the administrative level, the ALJ follows a five-step sequential evaluation process.   20 C.F.R. §§404.1520(a), 416.920(a). Under this process, the ALJ must sequentially determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant is able to do his or her past relevant work; and (5) whether the claimant is able to do any other work, considering his or her age, education, work experience and residual functional capacity ("RFC").  20 C.F.R. §§404.1520(a)(4), 416.920(a)(4).

Between Steps 3 and 4, the ALJ must also assess a claimant's residual functional capacity (RFC).  RFC is defined as "that which an individual is still able to do despite the limitations caused by his or her impairment(s)."  Burnett v. Comm'r of Soc. Sec., 220 F.3d 112, 121 (3d Cir. 2000) (citations omitted); see also 20 C.F.R. §§404.1520(e),  404.1545(a)(1),  416.920(e),  416.945(a)(1).    In  making  this

assessment, the ALJ considers all of the claimant's medically determinable impairments, including any non-severe impairments identified by the ALJ at step two of his or her analysis.  20 C.F.R. §§404.1545(a)(2), 416.945(a)(2).

Once the ALJ has made this determination, our review of the ALJ's assessment of the plaintiff's RFC is deferential, and that RFC assessment will not be set aside if it is supported by substantial evidence. Burns v. Barnhart, 312 F.3d 113, 129 (3d Cir. 2002); see also Metzger v. Berryhill, No. 3:16-CV-1929, 2017 WL 1483328, at *5 (M.D. Pa. Mar. 29, 2017), report and recommendation adopted sub nom. Metzgar v. Colvin, No. 3:16-CV-1929, 2017 WL 1479426 (M.D. Pa. Apr. 21, 2017); Rathbun v. Berryhill, No. 3:17-CV-00301, 2018 WL 1514383, at *6 (M.D. Pa. Mar. 12, 2018), report and recommendation adopted, No. 3:17-CV-301, 2018 WL 1479366 (M.D. Pa. Mar. 27, 2018).

At Steps 1 through 4, the claimant bears the initial burden of demonstrating the existence of a medically determinable impairment that prevents him or her in engaging in any of his or her past relevant work. Mason, 994 F.2d at 1064. Once this burden has been met by the claimant, it shifts to the Commissioner at Step 5 to show that jobs exist in significant number in the national economy that the claimant could perform that are consistent with the claimant's age, education, work experience and RFC.  20 C.F.R. §§404.1512(f), 416.912(f); Mason, 994 F.2d at 1064.

There is an undeniable medical aspect to an RFC determination, since that determination entails an assessment of what work the claimant can do given the physical limitations that the claimant experiences. Yet, when considering the role and necessity of medical opinion evidence in making this determination, courts have followed several different paths. Some courts emphasize the importance of medical opinion support for an RFC determination and state that "[r]arely can a decision be made regarding a claimant's residual functional capacity without an assessment from a physician regarding the functional abilities of the claimant." Biller, 962 F.Supp.2d at 778–79 (quoting Gormont v. Astrue, Civ. No. 11–2145, 2013 WL 791455 at *7 (M.D. Pa. Mar. 4, 2013)). In other instances, it has been held that "[t]here is no legal requirement that a physician have made the particular findings that an ALJ adopts in the course of determining an RFC." Titterington v. Barnhart, 174 F. App'x 6, 11 (3d Cir. 2006). Further, courts have held in cases where there is no evidence of any credible medical opinion supporting a claimant's allegations of disability that "the proposition that an ALJ must always base his RFC on a medical opinion from a physician is misguided." Cummings v. Colvin, 129 F.Supp.3d 209, 214–15 (W.D. Pa. 2015).

These seemingly discordant legal propositions can be reconciled by evaluation of the factual context of these decisions. Those cases which emphasize

the importance of medical opinion support for an RFC assessment typically arise in the factual setting, like that presented here,  where well-supported medical sources have opined regarding limitations which would support a disability claim, but an ALJ has rejected the medical opinion which supported a disability determination based upon a lay assessment of other evidence. <u>Biller</u>, 962 F.Supp.2d at 778–79. In this setting, these cases simply restate the commonplace idea that medical opinions are entitled to careful consideration when making a disability determination, particularly when those opinions support a finding of disability. In contrast, when no medical opinion supports a disability finding or when an ALJ is relying upon other evidence, such as contrasting clinical or opinion evidence or testimony regarding the claimant's activities of daily living, to fashion an RFC courts have adopted a more pragmatic view and have sustained the ALJ's exercise of independent judgment based upon all of the facts and evidence. <u>See</u> <u>Titterington,</u> 174 F. App'x 6; <u>Cummings</u>, 129 F.Supp.3d at 214–15. In either event, once the ALJ has made this determination, our review of the ALJ's assessment of the plaintiff's RFC is deferential, and that RFC assessment will not be set aside if it is supported by substantial evidence. <u>Burns v. Barnhart</u>, 312 F.3d 113; <u>see also</u> <u>Metzger v. Berryhill,</u> 2017 WL 1483328, at *5; <u>Rathbun v. Berryhill</u>, 2018 WL 1514383, at *6.

15

The ALJ's disability determination must also meet certain basic substantive requisites. Most significant among these legal benchmarks is a requirement that the ALJ adequately explain the legal and factual basis for this disability determination. Thus, in order to facilitate review of the decision under the substantial evidence standard, the ALJ's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests." Cotter v. Harris, 642 F.2d 700, 704 (3d Cir. 1981). Conflicts in the evidence must be resolved and the ALJ must indicate which evidence was accepted, which evidence was rejected, and the reasons for rejecting certain evidence. Id. at 706-707. In addition, "[t]he ALJ must indicate in his decision which evidence he has rejected and which he is relying on as the basis for his finding." Schaudeck v. Comm'r of Soc. Sec., 181 F. 3d 429, 433 (3d Cir. 1999).

### C.   Harmless Error Analysis

Social Security appeals are also subject to harmless error analysis. Therefore:

> [A]ny evaluation of an administrative agency disability determination must also take into account the fundamental principle that: "'No principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result.'" Moua v. Colvin, 541 Fed.Appx. 794, 798 (10th Cir. 2013) quoting Fisher v. Bowen, 869 F.2d 1055, 1057 (7th Cir. 1989). Thus, ALJ determinations in Social Security appeals are subject to harmless error analysis, Seaman v. Soc. Sec. Admin., 321 Fed.Appx. 134, 135 (3d Cir. 2009) and "the burden of showing that an error is harmful normally falls upon the party

attacking the agency's determination." <u>Shinseki v. Sanders</u>, 556 U.S. 396, 409, 129 S. Ct. 1696, 1706, 173 L.Ed. 2d 532 (2009).

<u>Metzger v. Berryhill</u>, No. 3:16-CV-1929, 2017 WL 1483328, at *4 (M.D. Pa. Mar. 29, 2017), <u>report and recommendation adopted sub nom.</u> <u>Metzgar v. Colvin</u>, No. 3:16-CV-1929, 2017 WL 1479426 (M.D. Pa. Apr. 21, 2017). In this regard "we apply harmless error analysis cautiously in the administrative review setting." <u>Fischer–Ross v. Barnhart</u>, 431 F.3d 729, 733 (10th Cir. 2005). However:

> In Social Security appeals courts may apply harmless error analysis when assessing the sufficiency of an ALJ's decision. <u>Seaman v. Soc. Sec. Admin.</u>, 321 Fed.Appx. 134, 135 (3d Cir. 2009). "Under the harmless error rule, an error warrants remand if it prejudices a party's 'substantial rights.' An error implicates substantial rights if it likely affects the outcome of the proceeding, or likely affects the 'perceived fairness, integrity, or public reputation of judicial proceedings.'" <u>Hyer v. Colvin</u>, 72 F. Supp. 3d 479, 494 (D. Del. 2014).

<u>Harrison v. Berryhill</u>, No. 3:17-CV-618, 2018 WL 2051691, at *5 (M.D. Pa. Apr. 17, 2018), <u>report and recommendation adopted,</u> No. 3:17-CV-0618, 2018 WL 2049924 (M.D. Pa. May 2, 2018).

It is against these legal benchmarks that we assess the instant appeal.

**D.    <u>This Decision Will Be Affirmed.</u>**

This case presents a striking circumstance. The plaintiff, John McNeill, has appealed the denial of his Social Security claim, even though the administrative record reveals that McNeill was actually employed at times following the date of the

alleged onset of his disability. Moreover, McNeill appeals the decision denying his claim despite the fact that there was meager clinical support of that claim, and every medical professional who opined on his capacity to work concluded that he could perform either medium or light exertional labor. Thus, in this case we are presented by an appeal from the denial of a disability claim by a claimant who was actually working; whose clinical records were devoid of any indication of disabling impairments; and as to whom all medical experts agreed that he retained the ability to perform some work.

On this factual record, the ALJ's decision to deny benefits to McNeill was amply justified. Recognizing this immutable fact and acknowledging that "[n]o principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result," Moua, 541 F. App'x. at 798, we conclude that the decision of the ALJ in this case should be affirmed. We do so while acknowledging that certain aspects of the ALJ's decision could have been more clearly articulated. However, in our view on this record no aspect of this analysis prejudiced McNeill's substantial rights by likely affecting the outcome of the proceeding, or the perceived fairness, integrity, or public reputation of these administrative proceedings. See Hyer

v. Colvin, 72 F. Supp. 3d 479, 494 (D. Del. 2014). Therefore, any errors in the ALJ's analysis of this case were, at most, harmless.

For example, while the ALJ's determination that none of the medical opinions describing McNeill's physical impairments were particularly persuasive could have been problematic on a more compelling factual record, Kenyon v. Saul, No. 1:20-CV-1372, 2021 WL 2015067 (M.D. Pa. May 19, 2021), in this case no clinical or opinion evidence actually supported a claim of disability for McNeill. Furthermore, McNeill's assertion that he was unable to work was belied by the fact of his employment after the alleged date of the onset of his disability. Moreover, the RFC actually fashioned by the ALJ adopted the weight carrying and exertional limitations found by the consulting, examining source, Dr. Monfared, as well as some of the postural limitations recommended by Dr. Monfared. Therefore, it cannot be said that McNeill was prejudiced by the fashioning of this RFC since there is no significant evidence in the record suggesting that the plaintiff suffered from a materially greater degree of impairment.

Similarly, while, the ALJ's consideration of McNeill's obesity could have been more fulsome, see Diaz v. Comm'r of Soc. Sec., 577 F.3d 500 (3d Cir. 2009), in this case the ALJ aptly noted that "the record did not indicate that [McNeill's] obesity increased the severity of a coexisting or related impairment." (Tr. 26). In the

19

absence of any clinical or opinion evidence indicating that McNeill's obesity exacerbated his other medical conditions in a way which rendered him disabled, the failure to discuss the plaintiff's obesity in greater detail is, at most, harmless error since the evidence simply would not support the conclusion that his obesity rendered him unable to work. See Suarez v. Astrue, 996 F. Supp. 2d 327, 332 (E.D. Pa. 2013) (applying harmless error analysis to obesity claim). Indeed, where a claimant fails to identify any material limitations resulting from his obesity, courts have frequently applied harmless error analysis to any *post hoc* critiques of sufficiency of the ALJ's evaluation of the claimant's obesity. West v. Berryhill, No. CV 16-0334, 2018 WL 1726615, at *6 (E.D. Pa. Apr. 10, 2018) (citing Jones v. Colvin, No. 11-6698, 2013 WL 5468305, at *1 (E.D. Pa. Oct. 1, 2013)) (finding failure to adequately address plaintiff's obesity harmless error where plaintiff "failed to mention obesity when the ALJ asked him why he was unable to work"); McPherson v. Colvin, No. 16-1469, 2016 WL 5404471, at *6 (E.D. Pa. Sept. 28, 2016) (same).

So it is here. Finding that substantial evidence supported the determination that McNeill was not disabled, and further concluding that any alleged errors in the assessment of this claim were harmless, given the lack of any competent clinical or opinion evidence supporting a claim of disability in McNeill's case, we will affirm the decision of the Commissioner.

**IV.** <u>**Conclusion**</u>

Accordingly, for the foregoing reasons, IT IS ORDERED that the plaintiff's request for a new administrative hearing is DENIED and the final decision of the Commissioner denying these claims is AFFIRMED.

An appropriate order follows.

/s/ *Martin C. Carlson*
Martin C. Carlson
United States Magistrate Judge

February 28, 2022